JAMES A. CARRIG *vs.* GILBERT-VARKER CORPORATION (and a cross action).

Middlesex.    May 7, 1943. — June 30, 1943.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Contract*, Performance and breach, Building contract, Construction, Entire or divisible. *Damages*, For breach of contract.

Statements made to the owner by the builder under a building contract after he had constructed twenty of thirty-five houses contemplated by the contract, to the effect that he had lost money on the twenty houses and that, notwithstanding that the owner then offered to do what was required of him by the contract respecting the remaining fifteen houses, he would not proceed with their construction unless he were paid substantially more for them than was provided in the contract, constituted an unjustified repudiation and present breach of the contract by the

builder excusing the owner from further performance and entitling him to recover damages from the builder.

A builder's breach of a building contract through an unjustified refusal to perform the work, which was never done, entitled the owner to recover from the builder the difference between the contract price for the work and a larger sum which it would have cost the owner to have it done by someone else.

A building contract covering the erection of thirty-five houses, whose provisions showed that each house was to be treated as a unit as to matters of construction, price, and payments, was divisible, and a breach of the contract by the builder through his unjustified refusal to erect fifteen of the houses after he had erected twenty of them did not preclude him from recovering from the owner sums due him respecting the twenty houses.

Two ACTIONS OF CONTRACT. Writs in the Superior Court dated May 2, 1942, and May 5, 1942, respectively.

The actions were heard by *Morton*, J., upon an auditor's report.

*J. G. Bryer*, for Gilbert-Varker Corporation.

*L. L. Green & E. D. Sharkey*, for Carrig, submitted a brief.

RONAN, J. Carrig, hereinafter referred to as the owner, entered into a contract with Gilbert-Varker Corporation, hereinafter called the contractor, for the construction of thirteen houses on a parcel of land in Natick, and he also made a second contract with the contractor for the erection of thirty-five houses on a lot of land in Watertown. The declaration filed by the owner seeks, in the first count, to recover damages for the alleged failure of the contractor to comply with its contract in the construction of the Natick houses; and, in the second count, to recover damages on account of the refusal of the contractor to erect fifteen houses in Watertown, and damages for its failure to erect in accordance with the contract the twenty houses that it actually built. The action of the owner and the second action, brought by the contractor, were referred to an auditor, whose findings of fact were to be final. In the first action the auditor found on the first count that the Natick houses were constructed in substantial compliance with the contract and found for the defendant, and upon the second count he found that the owner was not entitled to recover

damages for breach of contract in the construction of the twenty houses in Watertown, and that the contractor had repudiated its contract in refusing to proceed with the construction of fifteen more houses. He found for the owner for $9,935 together with interest. The judge ordered judgment for this last mentioned amount with interest. The contractor appealed.

The second action is brought by the contractor to recover, in the first count of its declaration, for a balance of $3,143.85 alleged to be due upon the Watertown contract, and, in the second count, a balance of $4,264.69 alleged to be due on the Natick contract. The third count was on an account annexed to recover the sums alleged in the first two counts and, as it included all the claims of the contractor, it is only necessary to deal with this count in the second action. The auditor found that the contractor had not been paid $2,816.35, after making certain adjustments and allowances for work performed and materials furnished in erecting the twenty Watertown houses, but he found and ruled that the contractor was not entitled to recover this amount, on the ground that he had refused to carry out the Watertown contract by not erecting the fifteen houses. He found that the contractor had substantially performed the Natick contract and, after making certain deductions in favor of the owner, found that the contractor was entitled to $2,859.64 with interest. The judge in this action by the contractor ordered judgment to be entered in the last mentioned sum with interest. Both parties appealed.

The parties on May 2, 1941, entered into a written contract by which the contractor agreed to build thirty-five houses in Watertown in accordance with certain plans and specifications accompanying the contract. The contract set forth four types of construction together with the basic price to be paid for each type. A schedule was included in the contract showing the various prices that were to be allowed the contractor for such alterations or additions as the owner might desire to have made in the construction of any of these houses. The type of the house to be erected on each of the thirty-five lots was designated in the con-

tract together with the basic price for the structure to be
erected upon that particular lot. The total basic price for
the erection of these thirty-five houses amounted to $132,-
928. The houses were to be built in groups of not less than
ten. The owner agreed to place a temporary construction
loan mortgage on each lot upon which a house was to be
built and to assign the proceeds of these mortgages to the
contractor, who was not required to commence work until
such assignment was made. The contractor was to be paid
on each house certain percentages of the contract price
when certain stages were reached in its construction, and
the final payment was to be made forty days after its com-
pletion. After the work began the contractor agreed to re-
lease a certain amount from the proceeds of the mortgage
on each lot to enable the owner to sell the house, and the
latter agreed to reimburse the contractor from the first
proceeds of the sale. The bank paid the amounts of the
various mortgages to the contractor. The contractor made
various releases of funds. As the work progressed it be-
came necessary to keep full accounts so that the financial
situation between the owner and the contractor could be
determined from time to time.

We now consider the first case. The owner did not ap-
peal from the order of judgment and the only question in
this case is whether the court was correct upon the findings
of the auditor in awarding the owner $9,935 together with
interest, in view of the refusal of the contractor to build
the fifteen Watertown houses. The owner on October 20,
1941, was advised by a bank that it would lend $3,600 on
each of five lots and $3,800 on each of ten lots, a total of
$56,000. The owner on October 25, 1941, informed Gilbert,
the president of the contractor, of the bank's offer. Gilbert
told him that the contractor did not intend to build these
houses under the contract as the contractor was losing
money. The owner told Gilbert that he expected the con-
tractor to observe the Watertown contract and Gilbert said
that the latter had already broken the contract. Gilbert
and the owner met again on October 27, 1941. Gilbert told
him that the contractor had lost money on the houses that

it had built and could not proceed with the contract unless it was paid for the work already done. Gilbert "definitely refused to do any more building in Watertown at the prices provided for in the contract." He later sent the owner the prices at which the contractor would construct the fifteen Watertown houses. These prices ranged from $662 to $697 over the contract prices, depending on the type of house. The bank again on November 4, 1941, renewed its offer to the owner to lend $56,000 on the fifteen houses. There was considerable correspondence between the parties and finally on February 10, 1942, the owner notified the contractor that he was ready to record and assign the proceeds of the construction mortgages on the fifteen houses to it. The contractor did not reply to this letter, and these fifteen houses were never built. The auditor found that up to October 27, 1941, each of the parties had waived any breaches by the other arising out of the Watertown contract, and that so far as it was a question of fact the contractor had repudiated the contract and had, without any legal excuse, refused to proceed further with the contract. He found that it would cost the owner $9,935 in excess of the contract price to construct these fifteen houses.

The contractor contends that all payments required to be made by the owner were not made when it refused to construct the fifteen houses; and that if there was a repudiation of the contract then the breach was merely an anticipatory one which did not give the owner the right to bring an action. It is not at all clear from the report whether a comparatively small amount of money was owed to the contractor, but if we assume that there was, then any delay in paying it was found by the auditor to have been waived. Moreover, it plainly appears from the report that the sole reason for the failure of the contractor to build the houses in question was that it insisted upon being paid an appreciably larger amount of money than was provided for by the contract, if it should undertake the work and fully perform the contract. There was no error in finding that the contractor repudiated the contract without any legal excuse. *King* v. *Faist*, 161 Mass. 449. *F. E. Atteaux*

& Co. Inc. v. *Mechling Bros. Manuf. Co.* 245 Mass. 483, 498. *Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541. *Thibodeau* v. *Webster,* 312 Mass. 363. Although the owner was ready and willing to record the mortgages and to assign the proceeds to the contractor, he was excused from actually assigning the proceeds to it by its definite refusal to complete its part of the contract. In these circumstances, that would have been an idle ceremony. *Carpenter* v. *Holcomb,* 105 Mass. 280. *Galvin* v. *Collins,* 128 Mass. 525. *Ballou* v. *Billings,* 136 Mass. 307. *Lowe* v. *Harwood,* 139 Mass. 133. *Mansfield* v. *Hodgdon,* 147 Mass. 304. *Freeland* v. *Ritz,* 154 Mass. 257. *Tobin* v. *Larkin,* 183 Mass. 389. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 202 Mass. 177. *Jackson & Co. Inc.* v. *Great American Indemnity Co.* 282 Mass. 337, 342.

There is nothing in the contractor's contention that its repudiation of the contract constituted nothing more than an anticipatory breach, which would be an insufficient ground upon which to maintain an action. It relies upon *Daniels* v. *Newton,* 114 Mass. 530. The refusal of the contractor to continue under the contract and construct the fifteen houses unless it was paid a higher price than was fixed by the contract, in the face of the offer of the owner to assign the proceeds of the mortgages to it in accordance with the provisions of the contract, made the failure of the contractor to proceed a present breach of the contract. It was said in *Daniels* v. *Newton,* 114 Mass. 530, at page 533, that the principle of that case does not apply where a party shows "a refusal or neglect to perform, at a time when and under conditions such that he is or might be entitled to require performance" from the other party. See *Parker* v. *Russell,* 133 Mass. 74; *Lowe* v. *Harwood,* 139 Mass. 133; *Foternick* v. *Watson,* 184 Mass. 187; *Edwards* v. *Slate,* 184 Mass. 317; *Barrie* v. *Quinby,* 206 Mass. 259, 267; *Sermuks* v. *Automatic Aluminum Heel Co.* 256 Mass. 478.

The owner was entitled to be put in the same position that he would have been in if the contractor had performed its contract. There is nothing in the auditor's report to indicate that the owner was not acting in good faith or that

he did not intend to have the houses constructed by the contractor. He was deprived of this advantage by the breach by the contractor. We think the proper measure of damages was the cost in excess of the contract price that would be incurred by the owner in having the houses built, and that there was no error in the first case in ordering judgment for this amount, with interest. *Lawton* v. *Fitchburg Railroad*, 8 Cush. 230. *Johnston* v. *Faxon*, 172 Mass. 466. *Dahlstrom Metallic Door Co.* v. *Evatt Construction Co.* 256 Mass. 404. *Vitagraph, Inc.* v. *Park Theatre Co. of Boston*, 249 Mass. 25. *Snelling* v. *Dine*, 270 Mass. 501. *F. A. Bartlett Tree Expert Co.* v. *Hartney*, 308 Mass. 407.

We now pass to the second case. The auditor has found that the contractor has substantially completed all of the thirteen houses included in the Natick contract; and that, after allowing certain deductions for defective and unfinished work, the contractor was entitled to recover $2,859.64, with interest. Nothing in the report or in the briefs challenges the correctness of this finding. The order for judgment so far as it concerned this claim was proper.

The remaining question is the right of the contractor to recover the unpaid balance arising from the construction of the twenty Watertown houses. The auditor has found that this work was done in substantial compliance with the contract and has made allowances to the owner for minor defects and for a small amount of uncompleted work. It is a general rule that one who has breached an entire contract to be performed for an entire price cannot recover either on the contract or upon a quantum meruit, save in certain instances in building contracts of which the present case is not one, *Homer* v. *Shaw*, 177 Mass. 1; *Douglas* v. *Lowell*, 194 Mass. 268; *Frati* v. *Jannini*, 226 Mass. 430; *Corbett* v. *A. Freedman & Sons, Inc.* 263 Mass. 391; *Hughes* v. *Rendle Corp.* 271 Mass. 208, but that where the contract consists of several and distinct items to be furnished or performed by one party, the consideration to be apportioned to each item according to its value and as a separate unit rather than as a part of the whole, then the contract is severable or divisible. *A. K. Young & Conant Manuf.*

*Co.* v. *Wakefield*, 121 Mass. 91. *Barrie* v. *Earle*, 143 Mass. 1. *Nickel* v. *Zeitz*, 258 Mass. 282. *McNulty* v. *Whitney*, 273 Mass. 494. *Moody* v. *Weymouth*, 276 Mass. 282. *Bianchi Bros. Inc.* v. *Gendron*, 292 Mass. 438. Whether a contract is entire or divisible depends upon the intention of the parties as disclosed by the language of the contract, the manner in which it is to be performed, the method of payment, and the circumstances attending its execution and operation. *Barlow Manuf. Co.* v. *Stone*, 200 Mass. 158. *Barrows* v. *Fuller*, 253 Mass. 79. *Fairfield Holding Corp.* v. *Souther*, 258 Mass. 540. The contract covered the construction of thirty-five houses, the money for which was secured by a separate mortgage placed on each lot and from the sale of each house upon its completion. Payments to the contractor for each house were made in instalments as the construction of that house reached certain stages. Each house was treated as a unit. The sum of $132,928 named in the contract was nothing more than the sum total of the basic prices for the erection of thirty-five different houses according to the basic type of construction designated for each house. A portion of this sum equal to the basic price of each particular house was allocated to the construction of that house, and the final instalment payment became due and payable to the contractor forty days after its completion. The construction of each house and the payment therefor were mutual and dependent provisions of the contract. We think the contract was a divisible one, and that the refusal of the contractor to construct the fifteen houses included in the contract, which were in addition to the twenty houses erected by the contractor, did not bar the contractor from recovering the unpaid balance for work done and materials furnished in constructing the twenty houses. *Badger* v. *Titcomb*, 15 Pick. 409. *White* v. *Atkins*, 8 Cush. 367. *Denny* v. *Williams*, 5 Allen, 1. *Barrie* v. *Earle*, 143 Mass. 1. *Edward Thompson Co.* v. *Washburn*, 191 Mass. 6. *Mark* v. *Stuart-Howland Co.* 226 Mass. 35. *Clark-Rice Corp.* v. *Waltham Bleachery & Dye Works*, 267 Mass. 402. *Bianchi Bros. Inc.* v. *Gendron*, 292 Mass. 438. Am. Law Inst. Restatement: Contracts, § 266 (3). Williston, Contracts, § 862,

The order for judgment in the first case must be affirmed; but the order in the second case is reversed and judgment must be entered on the third count (*Lewis* v. *Conrad & Co. Inc.* 311 Mass. 541) for the sums due the contractor on the Natick and Watertown houses in the amounts found by the auditor, together with interest. Interest in both cases is to be computed to the date of the judgment. *Rudnick* v. *Rudnick*, 281 Mass. 205. *Babcock Coal Co.* v. *Boston*, 303 Mass. 518.

<div align="right">

*So ordered.*